FILED

03/05/2026

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 12, 2025 Session

IN RE AYBREE Y.[1]

**Appeal from the Juvenile Court for Knox County**
**No. 117904            Timothy E. Irwin, Judge**

_____

**No. E2025-00400-COA-R3-PT**

_____

This action involves the termination of a mother's parental rights to her minor child. Following a bench trial with neither the mother nor her counsel present, the court found that clear and convincing evidence established several grounds of termination and that termination was in the best interest of the child. The mother argues on appeal, inter alia, that the court erred in permitting counsel to withdraw on the day of the hearing. We vacate the judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Vacated; Case Remanded**

JOHN W. MCCLARTY, P.J., E.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Michael B. Menefee, Knoxville, Tennessee, for the appellant, Paige C.

Margaret Held, Jonathan Baumgartner, and Amy Paul, Knoxville, Tennessee, for the appellees, Mohammed Y. and Jennifer M.

**OPINION**

**I.     BACKGROUND**

Aybree Y. ("the Child") was born to Paige C. ("Mother") and Mohammed Y. ("Father") in August 2014. The parties shared custody of the Child. Meanwhile, Mother gave birth to a son, Deklan, with a different partner in July 2018. The Tennessee Department of Children's Services ("DCS") removed both children from Mother's custody

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

based upon allegations of dependency and neglect due to substance abuse in April 2021. The Child was placed with Father, and Deklan was placed with his paternal grandparents.

Mother was granted supervised visitation with both children, who attended visitation together to further develop the sibling bond. Mother regularly attended visitation through Volunteer Visitation for approximately two months before the agency refused additional visitation as a result of Mother's alleged failure to follow their policies. Visitation was then coordinated through the Assurance Group. The record reflects that Mother visited the children 7 times from May 8, 2022, through November 13, 2022. Mother regularly brought crafts, food, and gifts to visitation. The children were happy to see Mother, who remained engaged throughout each visit. Mother failed to appear for visitation on September 18. The record does not explain her absence on that date.

Mother's regular attendance at visitation continued throughout 2023, with 11 visits from January 8, 2023, through August 6, 2023. Again, Mother regularly brought crafts, food, and gifts to visitation and remained engaged throughout the visits. The children appeared happy to see Mother, who expressed her love and care for them. However, two incidents were reported in 2023. One such incident occurred on May 14, 2023, when Deklan took Mother's vape pen. Mother quickly retrieved the pen. The second incident occurred on August 6, 2023, when the visit was cut short due to failure to adhere to visitation guidelines. The record reflects that Mother planned a party for the children for their birthday with approximately 30 people in attendance at a secondary location. Several of the party attendees were not approved by DCS, and Mother failed to adhere to the visitation supervisor's requests to stay in sight with the Children. Further, Mother was hostile and aggressive toward the supervisor when the supervisor ended the visit early.

On September 15, 2023, Father and his wife, Jennifer M. ("Stepmother") (collectively "the Petitioners"), moved to terminate Mother's parental rights and for Stepmother's adoption of the Child based upon the following statutory grounds: (1) abandonment by willful failure to remit child support; (2) the persistence of conditions which led to removal; and (3) failure to manifest an ability and willingness to assume custody of the Child. Mother filed an answer, denying the allegations. Shortly thereafter, Deklan's paternal grandparents filed a petition for termination of her rights to Deklan.[2]

The cases proceeded to discovery, and joint trial dates were set for April 4 and April 8, 2024. The parties filed joint motions to continue the companion cases based upon their failure to complete discovery. The trial court granted continuances by order, dated April 1, 2024, in which the court directed all parties "to cooperate to set a new trial date." Mother attended a deposition in May 2024 and was advised that a second deposition would occur at a later date and that the trial would occur after the second deposition.

_____

[2] Mother's parental rights to Deklan were terminated in the same proceeding; however, the children are the subjects of different appeals.

At some point, the attorneys agreed to a trial date of July 31, 2024. Mother's counsel advised her of the trial date by email; however, Mother failed to appear at the hearing. Mother's counsel moved for a continuance, stating:

> Up until a few weeks ago, [Mother] had been very involved in this case. She did depositions. She brought me some discovery answers[.] I have -- I have tried to communicate with her several times this month, as recently as yesterday. I have not received a response from her. So I'm not really sure why she is not here for today's hearing. So I would ask the Court for a continuance on her behalf. She has -- the proof would have shown, had she been here, she's very bonded with [the Child]. She does visit. They have a very strong relationship. So it's kind of odd to me that she's not here.

The court denied the motion, citing the Child's need for permanency and holding that it would not grant a continuance in the absence of any explanation for Mother's failure to appear. Counsel moved to withdraw, citing her inability to adequately represent Mother due to lack of communication. She stated that Mother failed to appear at a meeting scheduled earlier in the month and had failed to respond to telephone calls and emails. The court granted the motion, and the action proceeded to a hearing without counsel or Mother.

As pertinent to this appeal, Deklan's paternal grandmother confirmed that they would continue sibling visitation between the children if Mother's rights were terminated. Father likewise agreed that he would continue in his support of the sibling relationship between the children. As to Mother, Father stated that he initially shared co-parenting time without incident prior to the Child's removal by DCS due to allegations of methamphetamine use. He claimed that Mother told him that she last used drugs in October 2022. He noted that she lived with her parents and was involved with another man as recently as February 2024. He alleged that the man used drugs and was abusive.

Father testified that Mother worked at various establishments but never remitted payment for child support. He presented evidence to establish that Mother was employed at Token Games from April 2023 through July 2023. She received payment as follows:

| Date | Gross | Net |
|---|---|---|
| April 28, 2023 | $980.51 | $325.68 |
| May 12, 2023 | $760.45 | $68.07 |
| May 26, 2023 | $311.76 | $30.85 |
| June 9, 2023 | $922.08 | $94.11 |
| June 23, 2023 | $136.61 | $24.40 |
| July 7, 2023 | $1,118.31 | $112.50 |
| Total | $4,229.72 | $655.61 |

Father claimed that Mother obtained employment at First Watch at some point in 2024 and was employed there at the time of her deposition in April 2024. He did not present any evidence of her income from First Watch.

As to the Child, Father stated that he was in the process of moving the family to a larger house, where the Child would reside with him, her stepmother, and her half-sister. He had also enrolled the Child in a private school. He alleged that the Child was fearful of Mother at times and that she evidenced signs of fear after visitation. In contrast, he described a loving relationship between Stepmother and the Child. Stepmother testified, confirming her loving relationship with the Child and indicating her desire to adopt the Child in the event that Mother's parental rights were terminated.

Following the hearing, the trial court granted the termination petition based upon the statutory grounds alleged. The court found that termination of Mother's parental rights was in the best interest of the Child. Shortly thereafter, Mother learned of the termination order and filed a motion for new trial, claiming that her attorney advised her of the hearing by email on Saturday, July 27. She did not read the email until Father told her of the termination days after the hearing. She asserted that her attorney informed her of other important dates by telephone; however, she received no telephone call or notice by mail informing her of the trial date. The trial court denied the motion for new trial, finding that Mother had waived her right to counsel "by her failure to participate in preparing for this litigation, her failure to communicate with her attorney, and her failure to appear at the final trial." This appeal followed.

## II.    ISSUES

We consolidate and restate the issues pertinent to this appeal as follows:

A.    Whether Mother received proper notice of the hearing.

B.    Whether the trial court abused its discretion in its denial of the attorney's request for a continuance.

C.    Whether the trial court abused its discretion in granting the attorney's request to withdraw.

D.    Whether clear and convincing evidence supports the court's finding of statutory grounds for termination.

E.    Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child.

### III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652–53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

Although parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon statutory grounds. *See In Re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[ ] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Audrey S.*, 182 S.W.3d at 861 (citations omitted). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523–24 (Tenn. 2016) (citations omitted); *see also In re Gabriella D.*, 531 S.W.3d 662, 680 (Tenn. 2017).

In the event that the "resolution of an issue [] depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). "[T]his court gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## IV.    DISCUSSION

As a threshold and dispositive issue, we must first address whether the trial court properly determined that Mother effectively waived her right to counsel. Mother asserts that the trial court violated her due process rights by allowing her "appointed counsel" to withdraw. The Due Process Clause of the United States Constitution does not provide an absolute right to appointed counsel in termination proceedings. *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 31–32 (1981); *In re Lila F.*, No. E2023-01112-COA-R3-PT, 2024 WL 1480174, at *2 (Tenn. Ct. App. Apr. 5, 2024). The record also does not contain evidence establishing Mother's indigency or the appointment of counsel based upon a finding of indigency.

However, all parents in Tennessee are entitled to fundamentally fair procedures and representation by counsel at all stages of a termination proceeding regardless of financial status. Tenn. Code Ann. § 37-1-126(a)(2), (3); *In re Carrington H.*, 483 S.W.3d at 527–28. Once counsel undertakes representation of a client either through court appointment or retainer, such counsel may only withdraw from representation by leave of court in accordance with the Rules of Professional Conduct found in Tennessee Supreme Court Rule 8. The Rules provide, *inter alia*, that withdrawal is permissible if:

(1)    withdrawal can be accomplished without material adverse effect on the interests of the client;

(2)    the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(3)    the client has used the lawyer's services to perpetrate a crime or fraud;

(4)    the client insists upon taking action that the lawyer considers repugnant or imprudent;

(5)    the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6)    the representation will result in an unanticipated and substantial financial burden on the lawyer or has been rendered unreasonably difficult by the client;

(7)    other good cause for withdrawal exists; or

(8)    the client gives informed consent confirmed in writing to the withdrawal of the lawyer.

RPC 1.16(b). "The grant or denial of a request to withdraw as counsel is a matter addressed to the trial court's discretion." *Odom v. Odom*, No. M2018-00405-COA-R3-PT, 2019 WL 3546437, at *4 (Tenn. Ct. App. Aug. 5, 2019).

Here, counsel based her request to withdraw on Mother's lack of communication in the weeks prior to the hearing. Counsel alleged that Mother failed to respond to telephone calls and emails, failed to appear at a scheduled meeting earlier in the month, and failed to appear at the termination hearing. Notably, counsel did not allege that she provided notice that failure to communicate would result in the withdrawal of her representation or explain how her representation had been rendered unreasonably difficult by the recent absence.

In her affidavit in support of her motion for new trial, Mother claimed that she was present for her deposition in May 2024, after which she was advised that the termination hearing would follow a second deposition that was not yet scheduled. Mother attested that she did not receive any telephone calls or a notice by mail informing her of the new trial date. She acknowledged that counsel sent her an email on Saturday, July 27, four days before the scheduled hearing. She claimed that counsel informed her of all prior hearings by telephone and that she did not open the email until after she spoke with Father, who informed her of the termination decision. Once she learned of the termination decision, Mother promptly drove to the Knox County Juvenile Court, where a clerk confirmed that the termination hearing had occurred and that her parental rights were terminated.

Citing *Lila*, Mother now asserts on appeal that she was not provided any prior warning that her counsel intended to withdraw and that the record did not contain any evidence that she failed to fulfill an obligation to counsel or that counsel's representation had become unreasonably difficult. 2024 WL 1480174, at *2–3 (vacating the court's termination of parental rights based upon the court's erroneous decision to allow counsel to withdraw). In *Lila*, the mother missed appointments prior to the hearing but also advised counsel of a job interview scheduled for the day of trial. *Id.* at *2. The mother then appeared at the hearing shortly after counsel's withdrawal from representation. *Id.* The Petitioners respond that the circumstances presented were more akin to the scenario presented to the court in *In re Elijah B.*, No. E2010-00387-COA-R3-PT, 2010 WL 5549229, at *5 (Tenn. Ct. App. Dec. 29, 2010), where counsel had been unable to reach the father in a termination proceeding for over a month. In that case, the father conceded that counsel provided verbal notice of the trial date. A panel of this court held on appeal that the father had "effectively waived his right to appointed counsel by failing to assist his counsel or communicate with her at all in the two months before the hearing." *Id.* at *6.

Following our review, we hold that this case is distinguishable from *In re Elijah B.*, where the father had actual notice of the trial date but failed to appear. Recent case law has also limited the application of *In re Elijah B.*, decided in December 2010. *See generally In re Metric D.*, No. M2023-00700-COA-R3-PT, 2024 WL 3948615, at *2, 5 (Tenn. Ct. App. Aug. 27, 2024) (vacating the court's termination decision even though the father had prior notice of the hearing date because the father's attorney was allowed to withdraw when the father's status of incarceration was unclear at the time of the hearing and when the attorney did not provide any prior warning of withdrawal should the father not appear); *In re Tavarius M.*, No. M2020-00071-COA-R3-PT, 2020 WL 7479411, at *2 (Tenn. Ct. App. Dec. 18, 2020) (vacating the court's termination decision because the father's attorney was allowed to withdraw based upon the father's absence on the first day of the hearing when the attorney had not provided him with any prior warning that the attorney might withdraw); *In re A.P.*, No. M2017-00289-COA-R3-PT, 2019 WL 1422927, at *5–7 (Tenn. Ct. App. Mar. 29, 2019) (holding that the court abused its discretion in permitting counsel's withdrawal when the evidence was insufficient to establish that the mother had prior notice of the trial date and when the attorney did not provide any prior warning that he might

withdraw); and *In re Jamie B.*, No. M2016-01589-COA-R3-PT, 2017 WL 2829855, at *6 (Tenn. Ct. App. June 30, 2017) (holding that the court abused its discretion in permitting withdrawal after the mother appeared late for the hearing and was unsure how to proceed with her defense but had been provided no prior warning that her attorney might withdraw).

Here, Mother was not provided any prior warning of her counsel's intent to withdraw, despite the fact that her contact information remained the same throughout the pendency of the action. Counsel also failed to establish how representation had been rendered unreasonably difficult by Mother's absence when Mother participated throughout the discovery process and sat for a deposition just two months prior to the termination hearing. Under these circumstances, we conclude that the trial court erred in permitting counsel's withdrawal, rendering the termination proceedings fundamentally unfair. Accordingly, we vacate the judgment of the trial court and remand for a new trial. This holding is dispositive of the appeal and effectively pretermits our review of any remaining issues. *See In re Jamie B.*, 2017 WL 2829855, at *7 (vacating the court's termination decision and declining review of findings "based on evidence . . . offered at a hearing during which [the m]other did not have the benefit of counsel").

## V.    CONCLUSION

The judgment of the trial court is vacated. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of the appeal are taxed equally to the appellees, Mohammed Y. and Jennifer M.

s/John W. McClarty

JOHN W. McCLARTY, JUDGE